IN THE UNITED STATED DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **ASHLEY NICOLE THOMAS**<br>　　　Plaintiff,<br><br>　　　　　v.<br><br>**CORELOGIC RENTAL PROPERTY SOLUTIONS, LLC**<br>　　　Defendant. | **Civil No. 20-CV-01138**<br>**Jury Requested** |

### PLAINTIFF, ASHLEY NICOLE THOMAS', ORIGINAL COMPLAINT

**NOW COMES,** Plaintiff, Ashley Nicole Thomas, by her attorney and for her *Complaint* against Defendant, CoreLogic Rental Property Solutions, LLC, states as follows:

### INTRODUCTION

1.　The computerized nature of our society has resulted in a norm of accumulation and processing of data concerning individual American citizens.  Data technology, whether it is used by businesses, banks, the Internal Revenue, or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties.  Such timely information is intended to lead to faster and better decision-making by its requestors, thus benefiting individual consumers with convenience and efficiency.

2.　Unfortunately, this information has also become readily availability for, and subject to mishandling and misuse.  Individual consumers can sustain substantial damage, both emotionally and economically, whenever inaccurate or fraudulent information is disseminated and/or obtain about them.

3.　The ongoing technological advances in the area data of collection, processing, and dissemination have resulted in a boom for companies that accumulate and sell data concerning

individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4. These CRAs sell to readily paying subscribers (i.e. retailers, landlords, lenders, potential employers, and similarly interested companies, institutions, or entities) information, commonly called "consumer reports," concerning individuals who may be applying for retail credit, for lease of an apartment, for a car or mortgage loan, for employer or the like.

5. The Fair Credit Reporting Act, 15 U.S.C § 1681 *et seq*. ("FCRA"), federal law required has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private and financial information that they compile and sell about individual consumers.

6. One of the primary purposes in requiring CRAs to assure "maximum possible accuracy" of consumer information is to ensure the CRAs adopt reasonable procedures for meeting the needs of commerce:

It is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to confidentiality, *accuracy*, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter.

*See* 15 U.S.C. § 1681(b).

7. The preservation of one's good name is also an essential purpose of the FCRA's purposes.

8. To further the primary goal of greater accuracy, the FCRA has also required CRAs, to conduct "reasonable investigations" into bona fide disputes sent to CRAs by consumers

claiming to have inaccurate or incomplete information appearing in their credit files, to correct or update any such errors or omissions, and to report back to the consumer the results of the investigation.

9. This action seek compensatory, statutory, and punitive damages, costs and reasonable attorneys' fees for Plaintiff, Ashley Nicole Thomas ("Ms. Thomas" or "Plaintiff"), against CoreLogic Rental Property Solutions, LLC for their willful and/or negligent violations of the Fair Credit Reporting Act, as described herein.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 1681*p*. Venue in this judicial district is proper because Plaintiff resides in this judicial district and many, if not all, of the facts relevant to this *Complaint* occurred in this judicial district.

## PARTIES

11. Plaintiff, Ashley Nicole Thomas ("Plaintiff" or "Ms. Thomas"), is an adult individual presently residing in Spring, Montgomery County, Texas. Plaintiff is a "consumer" as defined in Section 1681*a*(c) of the FCRA.

12. Defendant, CoreLogic Rental Property Solutions, LLC ("CoreLogic"), is a Delaware limited liability company doing business throughout the country and in the State of Texas. CoreLogic is a "consumer reporting agency" as defined in Section 1681*a*(f) of the FCRA. CoreLogic is one the most widely used CRAs in the real estate industry.

## FACTUAL ALLEGATIONS

13. Plaintiff takes great pride in her name and well-established credit rating and she works hard to ensure that bills are paid and paid on-time. As such, Plaintiff believes and

understands that her credit record, specifically her rental history, is excellent as she pays her rent and was never sued for eviction.

14. On or about April 27, 2016, Plaintiff leased unit 526 on the Stoneleigh Ella Crossing ("Stoneleigh") property.

15. On or about May 26, 2017, Ms. Thomas moved out of unit 526 at Stoneleigh providing proper notice and with a zero-balance due.

16. On or about June 22, 2019, Ms. Thomas applied to lease a unit at SYNC at Harmony for her and her young daughter.

17. SYNC at Harmony required Ms. Thomas to complete a rental application, to provide rental history, and sign consents to access consumer report information and other personal information.

18. Ms. Thomas, in need of housing as her prior corporate housing lease was about to expire, complied with SYNC at Harmony's request and completed the required application and consents and other documents. Being informed that SYNC at Harmony needed to complete a credit and rental history check, Ms. Thomas paid the required application and consumer report fees.

19. On or about June 24, 2019, SYNC at Harmony denied Ms. Thomas' rental application stating the reason for the denial was an eviction filed against her by Stoneleigh—her previous landlord. Ms. Thomas was provided CoreLogic's information and told to file her dispute with CoreLogic.

20. Plaintiff was shocked, confused, upset, because she knew she did not violate the lease with Stoneleigh. She immediately began contacting Stoneleigh, to clear her good name.

21. On or about June 24, 2019, Ms. Thomas contacted CoreLogic to obtain more information and to dispute the information on her rental history.

22. Not knowing what to do Plaintiff called Cambria Cove (F/K/A Stoneleigh) to inquire as to why an eviction was placed on her rental history.

23. Plaintiff went back to SYNC at Harmony for reconsideration due to this false information on her credit report and was denied a second time stating the same reason—eviction.

24. On or about June 30, 2019, after trying to get an approved move-in date from SYNC at Harmony, Plaintiff and her family were rendered homeless, forced to pack their belonging and obtain a storage unit.

25. On or about July 1, 2019, Plaintiff and her young daughter moved into a hotel. Plaintiff continually checked in with SYNC at Harmony on a decision to reconsider her rental application.

26. On or about July 16, 2019 Zeb Maloney with NOI, the property management company that managed Stoneleigh contacted Plaintiff informing her that she did not have an eviction filed against her. However, a different tenant with a similar name, who lived in a different unit about fourteen (14) months prior to Plaintiff moving into unit number 526 at Stoneleigh, was the individual against whom the eviction was filed.

27. On or about August 5, 2019, Zeb Maloney filed letters into the eviction case explaining that Plaintiff did breach her lease but was otherwise a model tenant to assist Plaintiff in her efforts to successfully obtain housing.

28. On or about August 15, 2019, Plaintiff entered into a lease with WA Harmony, LLC (A/K/A Harmony Park) ("Harmony Park") where she was charged an additional fee because of the inaccurate information, namely the eviction, being reported on her rental history.

29. Ms. Thomas experienced tremendous stress, anxiety, and financial hardship as a result of being denied housing, being rendered homeless, having to stay in a hotel, having to pay extra because she was deemed a risk because an eviction was reported on her rental history.

30. It was only after hiring legal counsel and sending a demand letter, that CoreLogic corrected the problem in October of 2019.

31. Absent, litigation Ms. Thomas believes she will not be made whole.

## COUNT ONE

## VIOLATIONS OF THE FAIR CREDIT REPORTING

## ACT 15 U.S.C. § 1681*e*(b), 15 U.S.C. § 1681*i*(a)(1) and 15 U.S.C. § 1681*s*-2(b)(1)

32. Plaintiff hereby incorporates by reference all well-pleaded allegations contained in the proceeding paragraphs as if fully set forth herein.

33. A "consumer reporting agency" is defined by the FCRA as follows:

[A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purposes of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports. 15 U.S.C. § 1681*a*(f).

34. CoreLogic is a "consumer reporting agency" as defined by the FCRA.

35. Stoneleigh Ella Crossing is a "furnisher" as that term is used in § 1681*s*-2 of the FCRA.

36. Section 1681*n* of the FCRA imposes civil liability on any CRA or furnisher "who willfully fails to comply with any requirement" of the Act. *See* 15 U.S.C. § 1681*n*(a).

37. Section 1681*o* of the FCRA provides for civil liability against any CRA or furnisher which is negligent in failing to comply with any requirement imposed under the Act.

### CoreLogic's failure to Adopt and/or Follow Reasonable Procedures

38. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681*e*(b).

39. On at least two occasions, CoreLogic has prepared a patently false consumer report concerning Plaintiff.

40. Despite actual and implied knowledge that Plaintiff was not in the unit number listed in the eviction case, CoreLogic sold such false reports to one or more third part(ies), thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

41. On each such instance, CoreLogic willfully and/or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of Section 1681*e*(b).

42. Through Plaintiff's communication with CoreLogic, CoreLogic knows, or has sufficient reason to know, that when it prepared and sold a consumer report about Plaintiff, the information it was circulating was extremely inaccurate and damaging to Plaintiff.

43. Plaintiff has suffered out-of-pocket loss as a result of CoreLogic's willful and/or negligent violations of the FCRA including, without limitation, the increased deposit/risk fee to securing housing, the hotel fees, storage fees, and additional moving expenses.

44. Plaintiff was not free to seek and take advantage of various leasing opportunities available to other consumers because of CoreLogic's mixing and/or merging of credit files and its failure to report only accurate information about her.

45. As a direct and proximate result of CoreLogic's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to: economic loss due to the denial of housing, loss of opportunity to obtain housing, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling her to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the cost of this action pursuant to 15 U.S.C. § 1681*o*.

## CoreLogic's Failure to Conduct Reasonable Reinvestigations

46. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681*i*(a)(1). The Act imposes a 30-day time limitation for the completion of such an investigation. *Id.*

47. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681*i*(a)(5)(A).

48. On or about June 24, 2019, Plaintiff disputed consumer report information with CoreLogic and on or about June 24, 2019 CoreLogic verified the information as accurate.

49. A simple search on the Harris County Justice of the Peace website would have revealed the inaccuracy on Plaintiff's report. While the names were the same, the unit for which the eviction was filed was different.

50. Upon information and belief, CoreLogic had all the necessary information to conduct this simple search that would have revealed the inaccuracy immediately. CoreLogic had the court information, the case number, and the judgment date and the amount of the judgment.

51. This simple search would have shown the parties to the lawsuit and the unit number for the Ashley Thomas who was the defendant in the eviction case.

52. Upon information and belief, CoreLogic knew Plaintiff resided in unit number 526 and would have been able to clearly determine that the eviction case that was erroneously in Plaintiff's credit file was for an Ashley Thomas that resided in unit number 411.

53. Either CoreLogic conducted **_no_** investigation of Ms. Thomas' dispute, or such "investigation" was so shoddy as to allow objectively false and highly damaging information to remain in Ms. Thomas' credit file.

54. By failing to conduct a reasonable investigation into Plaintiff's disputes in this regard, CoreLogic willfully and/or negligently violated 15 U.S.C. § 1681*i*(a)(1) with respect to the dispute lodged by Plaintiff.

55. As a direct and proximate result of CoreLogic's disregard for Plaintiff's dispute as outlined above, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability for the average consumer.

56. As a direct and proximate result of CoreLogic's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA as outlined above, Plaintiff has suffered loss and damage including, but not limited to: economic loss due to the denial of housing, loss of opportunity to obtain housing, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling her to an

award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the cost of this action pursuant to 15 U.S.C. § 1681*o*.

## DAMAGES

57. As a direct and proximate result of CoreLogic's willful and/or negligent refusal to follow reasonable procedures to assure "maximum possible accuracy" as specifically mandated by the FCRA, Plaintiff has suffered loss and damage including, but not limited to: economic loss due to the denial of housing, loss of opportunity to obtain housing, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling her to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the cost of this action pursuant to 15 U.S.C. § 1681*n* and 15 U.S.C. § 1681*o*.

58. As a direct and proximate result of CoreLogic's disregard for Plaintiff's dispute as outlined above, Plaintiff has suffered a significant loss of trust in the credit reporting system and its accountability for the average consumer. Specifically, as a direct and proximate result of CoreLogic's willful and/or negligent refusal to conduct a reasonable investigation as mandated by the FCRA as outline above, Plaintiff has suffered loss and damage including, but not limited to: economic loss due to the denial of housing, loss of opportunity to obtain housing, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling her to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the cost of this action pursuant to 15 U.S.C. § 1681*n* and 15 U.S.C. § 1681*o*.

# RELIEF

## Relief One

59. Paragraphs one (1) through fifty-eight (58) of this *Complaint* are incorporated by reference and made a part of Relief One and Relief Two, inclusive.

60. Plaintiff seeks an award of actual, statutory, compensatory, and punitive damages for economic loss due to the denial of housing, loss of opportunity to obtain housing, damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment.

## Relief Two

61. Plaintiff seeks attorney's fees, cost, and expert fees. *See* 15 U.S.C. § 1681*o*.

## PRAYER FOR RELIEF

62. Plaintiff, Ashley Nicole Thomas, request the Court to cause CoreLogic Rental Property Solutions, LLC to be cited to appear and answer in this Court, and that upon final hearing, the Court grant to Plaintiff as follows:

**WHEREFORE,** Plaintiff, Ashley Nicole Thomas, respectfully prays this Court for the following relief:

(A) Actual damages in an amount to be proved at trial;
(B) Punitive damages as provided for by 15 U.S.C. § 1681*n*(a)(2);
(C) Statutory damages as provided for by 15 U.S.C. § 1681*n*;
(D) Cost and attorneys' fees as provided for by 15 U.S.C. § 1681*o*(a)(2)
(E) Cost and attorneys' fees as provided for by 15 U.S.C. § 1681*n*(3); and
(F) Such other and further relief as this Court deems just and proper.

**[Signature block on next page]**

Respectfully submitted,

*LaKisha Ledbetter-Anderson* (signature)

LaKisha Ledbetter-Anderson
Attorney in Charge
SBN: 24053785
Federal ID: 2979486
**Ledbetter Anderson & Associates, LLC**
11111 Katy Freeway
Suite 910
Houston, Texas 77079
Telephone No.: (713) 973-5765
Facsimile No.: (713) 973-5766/ (713) 548-5548

*Attorney for Plaintiff, Ashley Nicole Thomas*